UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

BRUCE LABOY, individually, on behalf of a class of all
others similarly situated, and on behalf of the BUILDING      11 Civ. 5127 (HB)
SERVICE 32 BJ SRSP FUND,

**OPINION AND ORDER**

                        Plaintiff,

      -against-

BOARD OF TRUSTEES OF BUILDING
SERVICE 32 BJ SRSP, HOWARD I.
ROTHSCHILD, JOHN SANTORA, CHARLES
DOREGO, FRED WARD, MICHAEL P.
FISHMAN, KEVIN J. DOYLE, HÉCTOR J.
FIGUEROA, BRIAN LAMBERT AND LARRY
ENGLESTEIN,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**Hon. HAROLD BAER, JR., District Judge:**

      Before the Court is a motion to dismiss the First Amended Complaint brought by the Board of Trustees of Building Service 32BJ Supplemental Retirement Savings Plan, Howard I. Rothschild, John Santora, Charles Dorego, Fred Ward, Michael P. Fishman, Kevin J. Doyle, Héctor J. Figueroa, Brian Lambert, and Larry Englestein (collectively "Defendants"). Plaintiff Bruce Laboy ("Laboy"), a participant in the Building Service 32BJ Supplemental Retirement Savings Plan, brought a putative Class Action Complaint alleging claims against the Trustees for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). For the reasons set forth below, the motion to dismiss is GRANTED.

## BACKGROUND

      Local 32BJ ("32BJ") is a union with more than 120,000 members within the Service Employees International Union. Compl. ¶ 17.[1] After a qualifying period, members of 32BJ are eligible to participate in the Plan, a defined-contribution 401(k) plan that helps covered members save for retirement. *Id.* at ¶ 18. Putnam Investments provided investment services to Plan

---

[1] References to the Complaint are to the First Amended Complaint, filed October 28, 2011.

1

participants from January 1, 2001 until June 2011. *Id.* at ¶ 25.  Plan participants had the option of self-directing investments among fourteen alternative funds or allowing their funds to be invested in the default fund, Putnam Asset Allocation: Conservative Portfolio (the "Default Fund"). *Id.* at ¶¶ 27, 31, 38.  The Default Fund was comprised of about 70 percent bonds and 30 percent stocks. *Id.* at ¶ 46.

## DISCUSSION

Laboy's complaint alleges two causes of action under 29 U.S.C. § 1104(a)(1) for breach of fiduciary duty. To state a claim for breach of fiduciary duty, a plaintiff must allege that (1) the defendant was the fiduciary of the plan, (2) the defendant's acts or omissions constituted a breach of duty; and (3) the breach caused harm. *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000).  Defendants do not dispute that they are plan fiduciaries.

### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In the ERISA context, the Court may consider the Plan, where it is "directly referenced in the complaint and is the basis of [the] action." *Faber v. Metro. Life Ins. Co.*, No. 08 Civ. 10588, 2009 WL 3415369, at *1 n.1 (S.D.N.Y. Oct. 23, 2009), *aff'd*, 648 F.3d 98 (2d Cir. 2011).

### B. Count I Fails to State a Claim

Count I alleges that Defendants violated their fiduciary duty by reason of inappropriate selection of the alternative funds and the Default Fund and inappropriate monitoring of the Default Fund.[2]  The claim that Defendants imprudently selected the Default Fund is almost

---

[2] The Trustees argue that Laboy does not have standing to raise Count I as to the selection of alternative funds because he was invested in the Default Fund.  Courts have concluded that a purported class plaintiff can bring "causes of action which are based on conduct that harmed him, but which sweep more broadly than the injury he personally suffered." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592-93 (8th Cir. 2009); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (disagreeing with determination that plaintiff could not represent a class of participants invested in plans other than his own); *see also Cress v. Wilson*, No. 06 Civ. 2717, 2007 WL 1686687, at *10 (S.D.N.Y. June 6, 2007) (citing *Fallick* with approval).  Laboy has standing to raise alternative funds claims. *Cf. Blessing v. Sirius XM Radio, Inc.*, 756 F. Supp. 2d 445, 450-51 (S.D.N.Y. 2010) (rejecting claim that plaintiffs lacked standing to raise claims in states in which they did not reside, and explaining, "the better course at this junction is to let the claims go forward and see what happens on the motion for class certification").

certainly time-barred.[3]  In support of the monitoring claim, the Complaint alleges that eight comparable funds outperformed the Default Fund over the last five years, by amounts ranging from 6.6 percent to 21.8 percent; Compl. ¶¶ 61-70, however, the Complaint acknowledges that over the last ten years, the Default Fund was in the top 37 percent of all comparable funds. *Id.* at ¶ 53.  The Complaint further alleges that the Plan should have offered at least one alternative in each of the nine investment styles of Morningstar, Inc.'s "Style Box." *Id.* at ¶¶ 40-42.  Plaintiff also asserts that the Plan should have offered "corporate bond funds or high yield bond funds" and criticizes the fact that the Plan offered just "one international fund option." *Id.* at ¶ 42.

Failure to remedy an investment that later becomes imprudent constitutes a breach of fiduciary duty. *See, e.g.*, *Leber v. Citigroup, Inc.* (*Leber II*), No. 07 Civ. 9329, 2011 WL 5428784, at *4 (S.D.N.Y. Nov. 8, 2011).  But, "[t]he ultimate outcome of an investment is not proof of imprudence or breach of fiduciary duties." *Flanigan v. Gen. Elec. Co.*, 93 F. Supp. 2d 236, 254 (D. Conn. 2000) (citing *Debruyne v. Equitable Life Assurance Co.*, 920 F.2d 457, 465 (7th Cir. 1990)).  Decisions in which courts have allowed allegations of imprudence to go forward rested on allegations that the defendants selected certain funds out of self-interest or demonstrated clear incompetence. *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592-93 (8th Cir. 2009) (concluding that "the process by which [fiduciaries] selected and managed the funds in the plan [was] tainted by failure of effort, competence, or loyalty").  There is no similar allegation here: Laboy claims that eight funds outperformed the Default Fund, while acknowledging that it was in the top 37 percent of comparable funds, and that it was inappropriately volatile.[4]  Similarly, his alternative funds claim is that the fiduciaries ought to have included specific types of funds, a claim courts have rejected. *See, e.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) ("[N]othing in the statute requires plan fiduciaries to include any mix of investment vehicles in their plan."). Laboy fails to specifically allege that any of the alternative funds underperformed or to compare their performance to any comparable

---

[3] Defendants concede that ERISA's six-year statute of limitations, 29 U.S.C. § 1113, is applicable to Laboy's claim for imprudent selection and monitoring and argue that, to the extent Laboy has stated a claim, it ought to be limited to the six-year period within ERISA's statute of limitations.  I agree. *See George v. Kraft Foods Global*, No. 08 Civ. 3799, 2011 WL 2784153, at *16 (N.D. Ill. July 14, 2011) (applying six-year statute of limitations).

[4] Laboy's argument that the Default Fund was inappropriately volatile is similarly without merit.  Laboy argues that the Default Fund experienced variable gains and losses over the last ten years, during which time we were in the midst of the greatest financial crisis since the Great Depression.

funds. Laboy has failed to state a claim that either the Default Fund or the alternative funds was imprudently selected or monitored.

## B. Count II Fails to State a Claim

Laboy's second claim is for excessive fees and administrative expenses of the Default Fund and the alternative funds.

### 1. Excessive Fees

Laboy compares the fees charged by the Default Fund with those of eight comparison funds, all of which outperformed the Default Fund, and some of which charged fees that were significantly lower than those of the Default Fund. Compl. ¶¶ 60-69. Laboy also argues that the alternative funds suffered from excessive fees; however, he neither compares their fees to those of any other funds nor offers any non-conclusory statement that they were excessive.

Courts are wary of excessive fee claims in situations such as with this Fund. *See Hecker*, 556 F.3d at 586; *see also Young v. Gen. Motors Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (quoting *Gartenberg v. Merrell Lynch Asset Mgmt.*, 694 F.2d 923, 928 (2d Cir. 1982)) ("[T]o establish a valid excessive fees claim, 'the advisor-manager must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining.' ").[5] Even among Laboy's hand-picked group of funds, the fees charged by the Default Fund are not outliers: one fund has higher management fees, a second has identical management fees, with the remaining six funds charging fees that are lower by varying amounts. Laboy has also failed to allege facts indicating that the Default Fund fees were excessive in light of the services rendered, *Young*, 325 F. App'x at 33.

As above, allegations of self-dealing are what set apart judicial decisions in *Young* and *Hecker*, where the courts concluded that the plaintiff had not stated a claim, from those in *Leber* and *Braden*, where the courts allowed the plaintiffs' claims to go forward. *Leber v. Citigroup, Inc.* (*Leber I*), No. 07 Civ. 9329, 2010 WL 935442, at *4 (S.D.N.Y. Mar. 16, 2010) (sustaining complaint that alleged that defendants intentionally selected affiliated funds with fees that were as much as 227 percent higher than the fees charged by comparable unaffiliated funds); *Braden*,

---

[5] Laboy's assertion that *Young* is not controlling because it is a Summary Opinion is misguided. First, it is not clear that *Young* is a Summary Opinion. More importantly, however, "[t]he Court is not persuaded that it is at liberty not only to disregard but contradict a Second Circuit ruling squarely on point merely because it was rendered in a summary order." *United States v. Tejada*, No. 07 Cr. 502, 2010 WL 4967977, at *2 (S.D.N.Y. Dec. 2, 2010).

588 F.3d at 590 (concluding that "the process by which the mutual funds were selected was tainted by [the defendants'] failure to consider trustee Merrill Lynch's interest in including funds that shared their fees with the trustee").  Here, there is no similar allegation that Defendants chose funds with high fees based on affiliation with the Defendants or the Plan sponsors.  The claim that the Default Fund and alternative funds suffered from excessive fees fails.

        **2.  Excessive Expenses**

Laboy asserts that the administrative expenses of the Default Fund were excessive.  In stating his claim for excessive administrative expenses Laboy provides the amounts of these expenses, but he fails to compare them to those of comparable funds. Compl. ¶ 57.  He also asserts that the Default Fund suffered from high portfolio turnover, which imposes high transaction costs on plan participants. *Id.* at ¶ 55.  However, Laboy fails to offer any comparison to the turnover rates of any comparable funds or any other evidence suggesting that the turnover rates were excessive.  As to the alternative funds, Laboy fails to provide any evidence of their expenses at all.  In short, Laboy offers no non-conclusory allegations that either the Default Fund or the alternatives suffered from excessive administrative expenses.

**C.  Leave to Replead is Granted**

Neither count survives this motion to dismiss. *See Leber I*, 2010 WL 935442, at *12 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.") (quoting *Iqbal*, 129. S. Ct. at 1950).  Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be "granted freely . . . when justice so requires."  Courts should deny leave to amend when a claim is "clearly frivolous or legally insufficient on its face." *Ruiz v. Suffolk Cnty. Sheriff's Dep't*, No. 03 Civ. 3545, 2008 WL 4516222, at *2 (E.D.N.Y. Oct. 2, 2008) (internal quotation marks omitted).  Laboy's amended complaint is not clearly frivolous or legally insufficient; therefore, this Court grants Laboy leave to file a third amended complaint. *Compare Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 555 (S.D.N.Y. 2007) (dismissing complaint without leave to amend after the court had previously granted leave to replead twice with "specific information" about why the claims had failed), *with Atkins v. Apollo Real Estate Advisors, L.P.*, No. 05 Civ. 4365, 2008 WL 1926684, at *16 (E.D.N.Y. April 30, 2008) (granting leave to file amended complaint although plaintiffs had already filed third amended complaint in response to a motion to dismiss because the court was "unconvinced that any further amendment would be fruitless").

## CONCLUSION

I have considered the parties remaining arguments and find them without merit. For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED. Leave to amend the Complaint within 30 days is granted to Laboy. The Clerk of the Court is instructed to close this motion and remove the case from my docket.

**SO ORDERED.**

New York, New York
March 6, 2012

_____
Hon. Harold Baer, Jr.
U.S.D.J.