UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

BRUCE LABOY, individually, on behalf of a class of all
others similarly situated, and on behalf of the BUILDING    11 Civ. 5127 (HB)
SERVICE 32 BJ SRSP FUND,
                                                            **OPINION AND ORDER**
                Plaintiff,

        -against-

BOARD OF TRUSTEES OF BUILDING
SERVICE 32 BJ SRSP, HOWARD I.
ROTHSCHILD, JOHN SANTORA, CHARLES
DOREGO, FRED WARD, MICHAEL P.
FISHMAN, KEVIN J. DOYLE, HÉCTOR J.
FIGUEROA, BRIAN LAMBERT AND LARRY
ENGLESTEIN,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
**Hon. HAROLD BAER, JR., District Judge:**

      Before the Court is a motion to dismiss the Second Amended Complaint ("SAC") brought by the Board of Trustees of Building Service 32BJ Supplemental Retirement Savings Plan ("SRSP" or the "Plan"), Howard I. Rothschild, John Santora, Charles Dorego, Fred Ward, Michael P. Fishman, Kevin J. Doyle, Héctor J. Figueroa, Brian Lambert, and Larry Englestein (collectively, "Defendants").  Plaintiff Bruce Laboy ("Laboy"), a participant in the Building Service 32BJ SRSP, brought a putative Class Action Complaint that alleged claims against the Trustees for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  For the reasons set forth below, the motion to dismiss the SAC is GRANTED.

## BACKGROUND

      The background of this case is available in my earlier opinion, in which I granted Defendants' motion to dismiss the First Amended Complaint ("FAC"), but granted Laboy leave to replead.  *See Laboy v. Board of Trustees of Building Service 32 BJ SRSP*, No. 11 Civ. 5127, 2012 WL 701397 (S.D.N.Y. Mar. 6, 2012).  I summarize it again here.  Local 32BJ is a union

with more than 120,000 members within the Service Employees International Union. SAC ¶ 20. The Plan against which this wrongdoing is alleged is a defined-contribution 401(k) plan that helps covered members save for retirement. *Id.* at ¶ 21.  Defendants selected Putnam Investments to provide investment services to Plan participants from January 1, 2001 until June 2011. *Id.* at ¶ 28.  Plan participants had the option of self-directing investments among fourteen alternative funds (the "Alternative Funds") or allowing their funds to be invested in the default fund, Putnam Asset Allocation: Conservative Portfolio (the "Default Fund"). *Id.* at ¶¶ 30, 34, 42.

## DISCUSSION

### A. Legal Standard

According to the Supreme Court's most recent pronouncements, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The requirement that the court accept all factual allegations as true does not apply to "mere conclusory statements." *Id.*  The court's determination of whether a complaint states a "plausible claim for relief" is a "context-specific task" that requires application of "judicial experience and common sense." *Id.* at 679.

In the ERISA context, the Court may consider the Plan, where it is "directly referenced in the complaint and is the basis of [the] action." *Faber v. Metro. Life Ins. Co.*, No. 08 Civ. 10588, 2009 WL 3415369, at *1 n.1 (S.D.N.Y. Oct. 23, 2009), *aff'd*, 648 F.3d 98 (2d Cir. 2011).

### B. The SAC Fails to State a Claim

The FAC asserted two claims, the first was for breach of fiduciary duty for "selecting and continuing to offer an inappropriate and poorly performing menu of investment choices to plan participants," and the second for "causing and allowing the plan to pay unreasonable fees and expenses." FAC ¶¶ 89-101.[1]  The sole claim in the SAC alleges breach of fiduciary duties to the SRSP by "failing to prudently manage the plan," SAC ¶¶ 106-115, due to Defendants' (1) failure to implement a prudent procedure to evaluate, monitor and maintain the Default Fund, *id.* at ¶

---

[1] I previously rejected Defendants' argument that Laboy lacked standing to assert Count I. *See Laboy*, 2012 WL 701397, at *1 n.2.

110, and (2) poor and inappropriate investment selection of the Alternative Funds. *Id.* at ¶ 111. By their motion, Defendants seek dismissal of the SAC with prejudice.

To state a claim for breach of fiduciary duty, a plaintiff must allege that (1) the defendant was the fiduciary of the plan, (2) the defendant's acts or omissions constituted a breach of duty; and (3) the breach caused harm. *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000). Defendants do not dispute that they are plan fiduciaries.

### 1. Default Fund

The SAC alleges that Defendants breached their fiduciary duties by their failure to implement a prudent procedure to evaluate and monitor the Default Fund. Further, Plaintiff contends that Defendants breached their fiduciary duties by their maintenance of the Default Fund as the Plan's default despite the fact that it was inferior to alternatives, and that Defendants failed to inform themselves and monitor the fees and expenses of the Default Fund or the performance and volatility of the Default Fund compared to alternatives. SAC ¶ 110. In support of this claim, the SAC—like the FAC—alleges that eight comparable funds outperformed the Default Fund over the five-year period beginning October 19, 2006, by amounts between 6.6 percent and 21.8 percent. SAC ¶ 68; FAC ¶¶ 61-70.[2] However, "the ultimate outcome of an investment is not proof of imprudence or breach of fiduciary duties." *Flanigan v. Gen. Elec. Co.*, 93 F. Supp. 2d 236, 254 (D. Conn. 2000); *see also In re Citigroup ERISA Litig.*, 662 F.3d 128, 140 (2d Cir. 2011) ("We cannot rely, after the fact, on the magnitude of the decrease. . . rather, we must consider the extent to which plan fiduciaries at a given point in time reasonably could have predicted the outcome that followed.").[3]

---

[2] Defendants point out that in the FAC, Plaintiff acknowledged that over the 10-year period that ended in March 2011, the Default Fund was nearly in the top third of similar funds according to Lipper, a research organization that rates mutual funds. FAC ¶ 53. Put another way, it was close to the top of the herd. However, the SAC omits this figure, and instead focuses on the 5-year period that according to Plaintiff, "most closely track[s] the six-year statute of limitations period governing this Complaint." SAC ¶ 62. During the 5-year period that ended in March 2011, the Default Fund performed in the bottom two-fifths of similar funds according to Lipper. *Id.* Nonetheless, the performance of the Default Fund during the entire time period that it served as the default is relevant to the prudence or imprudence of maintaining it as the Default Fund.

[3] I also previously rejected Plaintiff's claim of excessive volatility, which rested in large part on the fact that the Default Fund experienced a large decrease in 2008 followed by a larger rebound in 2009. Defendants' compare the volatility of the Default Fund with the volatility within the eight comparison funds, Defs.' Mem. 23 n.11, which offers further evidence that the Default Fund experienced losses and gains of similar amounts to those in Plaintiff's comparison group during the middle of the worldwide financial collapse.

3

Instead of a separate claim for breach of fiduciary duty due to "unreasonable fees and expenses," FAC ¶¶ 89-101, the SAC supplements its failure to monitor claim with assertions that these eight comparable funds had the same or lower expense ratios. SAC ¶ 68.[4] Laboy's decision to move the excessive fee and expense allegations from their own independent claim in the FAC and use them to supplement the claim for imprudence due to failure to monitor in the SAC amounts to little more than cutting and pasting. For the reasons discussed in my earlier opinion, I find that these allegations are insufficient to state a claim for imprudent monitoring.[5] *See Young v. Gen. Motors Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (quoting *Gartenberg v. Merrell Lynch Asset Mgmt.*, 694 F.2d 923, 928 (2d Cir. 1982)) ("[T]o establish a valid excessive fees claim, 'the advisor-manager must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining.' ").[6] The comparison chart belies Plaintiff's claim for failure to monitor due to the Default Fund's excessive expense ratio; among the group of comparable funds that were handpicked by Plaintiff, the Default Fund's expense ratio was not notably excessive. SAC ¶ 68 (showing that the Default Fund fees were .82 percent of assets, while another fund had a slightly higher expense ratio, one had an identical ratio, and the rest had ratios that were lower by varied amounts).[7]

The claim for failure to monitor the Default Fund is not significantly different from the claim that I previously dismissed. In my earlier decision, I noted that "[d]ecisions in which courts have allowed allegations of imprudence to go forward rested on allegations that the

---

[4] The expense ratio is calculated by dividing the funds operating expenses by the average dollar value of its assets.

[5] Laboy also fails to respond to Defendants' argument that it is performance *net of* fees rather than mere fees that courts have used to find that a claim for breach of fiduciary duty had been stated. Defs.' Mem. 19 (citing *Tibble v. Edison Int'l*, No. CV 07-5359, 2010 WL 2757153, at *111 (C.D. Cal. July 8, 2010) ("[T]he most important criteria is the fund's performance net of fees. Thus, while fees are certainly important, they are only one part of the analysis; a fiduciary must look to the fund's performance as well.")).

[6] Plaintiff continues to suggest, without citation, that I am at liberty to disregard *Young* merely because it is a ruling by "Summary Order." I disagree. *See Laboy*, 2012 WL 701397, at *2 n.5.

[7] The "turnover rate" is the rate at which a fund's securities are bought and sold each year. SAC ¶ 64. Plaintiff has added comparisons between the turnover rates in the Default Fund and the eight comparison funds, and suggests that the high turnover rate in the Default Fund caused additional transactional costs for the Default Fund. *Id.* at ¶¶ 64, 75-83. Defendant points out, however, that "Laboy fails to compare these fees to the transactional fees incurred by the eight other vehicles." Defs.' Mem. 24 n.12. Although Laboy has now demonstrated that the Default Fund experienced higher turnover than the comparison funds, Laboy cites no case, and I have found none, in which allegations of high turnover sustained an imprudent monitoring claim.

defendants selected certain funds out of self-interest or demonstrated clear incompetence." *Laboy*, 2012 WL 701397, at * 2.  Presumably because there is nothing to substantiate them, Laboy's amended complaint avoids any allegations of self-interest, and rather alleges that Defendants were simply incompetent.   Unfortunately, Laboy's view of "clear incompetence," absent allegations of self-interest, does not comport with the case law.

The additions that Laboy offers in his SAC to bolster this claim are either conclusory or have been rejected by other courts.  For example, Laboy adds to his complaint statements that Defendants "fail[ed] to implement a prudent and adequate procedure for evaluating and monitoring the default fund and their failure to ensure that a reasonably-priced investment option was selected as the default fund," SAC ¶ 55, using other similar phrases throughout the SAC.  Laboy says nothing about how the Default Fund was actually managed, a glaring omission given that Laboy had access to Defendants' meeting notes dating back to 2001, Defs.' Mem. 12; Defs.' Reply 3 n.1, but maintains that by failing to replace it, Defendants breached their fiduciary duty to participants.  These statements are mere conclusions that simply do not rise to the level of the factual allegations in complaints that have survived a motion to dismiss.[8] *Cf. Albert v. Alex Brown Management Services, Inc.*, No Civ. A. 762-N, Civ A. 763 N, 2005 WL 2130607, at *5–6 (Del. Ch. Aug. 26, 2005) (finding that plaintiff's allegations that fund managers made false and misleading statements, that they took specific actions that caused fund investments to skyrocket then plummet, together with allegations that managers failed to disclose the fund's corresponding liquidity issues to investors and met less than once a year to address those issues, "just barely" supported allegations that managers devoted inadequate time and attention to managing funds).

Plaintiff's other additions similarly fail to remedy the problems in the FAC.  Laboy adds allegations about the process by which the Default Fund was replaced on June 6, 2011, almost two months before the original complaint was filed. SAC ¶¶ 70–72.  Defendants point out correctly that "[a]llegations regarding subsequent, prudent conduct do not serve as evidence that prior conduct was imprudent." Defs.' Mem. 17.  It would turn the law on its head were we to embrace a concept where a plaintiff could use allegations of prudent measures to prove a defendant's imprudence: a trustee might hesitate to replace a fund in its plan out of fears that

---

[8] In fact the *only* reference to the minutes in the SAC comes from Plaintiff's description of the decision to replace the Default Fund. *See infra*.

such action could later be used to sustain a claim for breach of fiduciary duty. *Cf. Estate of Hamilton v. City of New York*, 627 F.3d 50, 53 (2d Cir. 2010) (noting that Federal Rule of Evidence 407 "prohibits a plaintiff from introducing evidence of subsequent remedial measures taken by the defendant in order to establish the defendant's underlying liability"). The Complaint indicates that Defendants' consultant, Portfolio Evaluations, Inc. ("PEI"), recommended switching to a new default fund and concluded that "the Putnam fund may not be the best choice going forward," SAC ¶ 70, but said nothing about the prudence or imprudence of having chosen or used the fund as the Default Fund in the past. Defendants' decision to change funds will not sustain allegations that the Default Fund was an imprudent choice previously.

The SAC's claims as to the Default Fund boil down to allegations that eight similar funds outperformed the Default Fund, that some of them had lower expense ratios, that the Default Fund was volatile in the midst of a worldwide financial collapse, and that in 2011, Defendants chose to replace the Default Fund. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *See Leber I*, 2010 WL 935442, at *12 (dismissing (quoting *Iqbal*, 129. S. Ct. at 1950). As in *Leber I*, Plaintiff's allegations here "do little to distinguish the [Default Fund] and its fiduciaries from those of virtually any other plan covered by the Act." *Id.* The Default Fund is not significantly different from any of the many funds that lost money during the worldwide financial crisis or from the myriad of those that ended up in the bottom half on mutual fund ratings.

### 2. Alternative Funds

The SAC also alleges that Defendants breached their fiduciary duty due to failure to monitor by their "poor and inappropriate investment fund selection." SAC ¶ 111. The support for this portion of the imprudent monitoring claim in the SAC, like that in the FAC, is based on failure to include funds in the Morningstar Inc. "Style Box." FAC ¶¶ 40-42; SAC ¶¶ 45-46. Morningstar, Inc. is an independent research organization that evaluates mutual funds and has created a "Style Box" that suggests different types of investment choices that ought to be included within a plan. I explained in my earlier opinion that "nothing in the statute . . . requires plan fiduciaries to include any mix of alternative of investment vehicles in their plan." *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009). As in *Saint Vincent Catholic Med. Ctrs. v. Morgan Stanley Inv. Mgmt. Inc.*, where the court dismissed a claim for imprudent monitoring, Laboy fails to offer any allegations as to how the Alternative Funds were selected or monitored.

No. 09 Civ. 9730 (PKC), 2010 WL 4007224, at *4 (S.D.N.Y. Oct. 4, 2010) (dismissing a claim for imprudent monitoring where the complaint "contains no allegations of inadequacy of Morgan Stanley's investigation of the merits of its investments" but instead premised "liability on the poor results of the investments").  Here, Plan participants had fourteen Alternative Funds to choose from during the relevant period. SAC ¶ 42.

Although Laboy believes that *Braden v. Wal-Mart*, 588 F.3d 585, 590 (8th Cir. 2009), contains allegations that are "[n]early identical," to those in the SAC, Laboy is mistaken. Notwithstanding the fact that Laboy has attempted to replicate many of the allegations in the *Braden* complaint, in that case, the plaintiff alleged that "the process by which the mutual funds were selected was tainted by [the defendants'] failure to consider trustee Merrill Lynch's interest in including funds that shared their fees with the trustee."[9] *Id.* There is no allegation even remotely similar to this fee-splitting allegation in *Braden*.  There, the allegations were not merely that the defendants failed to ensure a prudent approach to management of the Plan, but rather that the motivation was the greed of the Trustees. *See id.* at 596.  The *Braden* complaint included allegations of clear self-interest, *e.g.*, that defendants "knew or should have known that revenue sharing and other kickback payments were paid . . . to Merrill Lynch." Berg Decl. Ex. 1, *Braden* Compl. ¶ 120. As I explained in my earlier opinion, self-interest is the lynchpin for nearly every claim charging breach of fiduciary duty in the ERISA context.  That lynchpin is absent from the SAC. This is not to say that a fact pattern might state a claim based solely on allegations of incompetence, but rather that this is not such a case.[10]

---

[9] My earlier decision in *Veera v. Ambac Plan Admin. Comm.*, 769 F. Supp. 2d 223 (S.D.N.Y. 2011), is distinguishable.  That case involved the applicability of the *Moench* presumption to a case where plaintiffs alleged that defendants breached their fiduciary duties by maintaining company stock in an employer-sponsored savings plan when they knew or should have know of the company's impending bankruptcy.

[10] Because I conclude that Laboy has failed to state a claim for breach of fiduciary duty due to imprudent monitoring, I need not reach Defendants' argument that Laboy also failed to establish a connection between the alleged breach and the loss Laboy seeks to recover. Defs.' Mem. 15.

## CONCLUSION

I have considered the parties' remaining arguments and find them to be without merit. For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED with prejudice. The Clerk of the Court is instructed to close this motion and remove the case from my docket.

**SO ORDERED.**

New York, New York
August 7, 2012

_____
Hon. Harold Baer, Jr.
U.S.D.J.